**HOLLSTEIN KEATING CATTELL JOHNSON & GOLDSTEIN P.C.**
By: James W. Johnson (JJ4811)
Willow Ridge Executive Office Park
750 Route 73 South, Suite 202B
Marlton, NJ  08053
(856) 810-8860
jjohnson@hollsteinkeating.com
**ATTORNEYS FOR**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN THE MATTER OF THE COMPLAINT OF                    Trenton Vicinage

NORTHSTAR MARINE INC.                    Civ.
COMPANY, INC.

AS TITLED OWNER OF THE BARGE NORTHSTAR 92

## COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY

Plaintiff Northstar Marine Inc. (hereinafter "Northstar"), as titled owner of the

barge NORTHSTAR 92 (hereinafter "NORTHSTAR 92") brings this Complaint, by and

through its attorneys Hollstein Keating Cattell Johnson & Goldstein, PC, for Exoneration

from or Limitation of Liability, pursuant to 46 U.S.C. §§ 30501, *et seq.* and Rule F of the

Supplemental Rules for Admiralty and Maritime Claims, and states as follows:

1.     This matter is within the admiralty and maritime jurisdiction of this Court,

as the action arises under the laws of the United States and is a claim within the meaning

of Rule 9(h) of the Federal Rules of Civil Procedure and of the special matters of the

supplemental rules relating to admiralty actions, specifically those laws defining a vessel

owner's right to limitation and/or exoneration pursuant to 46 U.S.C. § 30501, *et seq.* and

various statutes, rules and regulations relating thereto.

2.     At all times relevant hereto, Northstar was and is a corporation with its principle place of business being Northstar Marine, Inc., 36 Clermont Dr., Clermont, New Jersey 08210 in the State of New Jersey.

3.     At all times relevant hereto, Northstar was the titled owner of the NORTHSTAR 92 and the NORTHSTAR 92 was operated on the navigable waters of the United States of America, and which was tight, staunch, strong, and seaworthy in all respects at all material times hereto.

4.     The NORTHSTAR 92 is presently within the jurisdiction of this Honorable Court.

5.     Venue lies within this district under the provisions of Supplemental Admiralty Rule F(9).

6.     On or about January 25, 2013, Northstar entered into a "Master Bareboat Charter Agreement" (hereinafter "Charter") with Hydro Marine Construction Company, Inc. (hereinafter "Hydro"). A true and correct copy of that Charter is attached hereto as **Exhibit 1**.

7.     Prior to delivery of the NORTHSTAR 92,  Northstar used due diligence to ensure that the barge was tight, staunch, strong, properly equipped and supplied, all in good order and condition and suitable for charter, and at all times prior to the charter, exercised due diligence to make the said vessel in all respects seaworthy and properly equipped, sufficiently fitted and in all respects seaworthy and fit for safe operation.

8.     Pursuant to the Charter, Hydro  agreed to "maintain and repair" and use "due diligence to maintain and preserve the Vessel.

9.     Hydro also agreed to man, supply and navigate the NORTHSTAR 92

throughout the period of the Charter.

10.     Hydro further agreed to provide insurance coverage pursuant to the specific terms of the Charter, with Northstar being named as an additional insured under said insurance.

11.     Hydro further agreed to defend, indemnify, and hold Northstar harmless from and against, all suit, actions, claims and demands which arise out of the use of the chartered NORTHSTAR 92 regardless of how such personal injury or death is caused and even if caused by the negligence of Northstar.

12.     On or about February 17, 2013, Michael McQuade was killed due to the accident which occurred near the NORTHSTAR 92. At the time, the NORTHSTAR 92 was under the exclusive use, control, and operation of the bareboat charterer, Hydro. The NORTHSTAR 92 was not damaged as a result of this incident and to the best of Northstar's knowledge there were no liens or unsatisfied liens on the vessel at the time of the accident.

13.     The losses, damages and/or injuries described above occurred entirely without the privity or knowledge of Northstar, or any of Northstar's agents, employees and/or assigns as the NORTHSTAR 92 was bareboat chartered to Hydro.

14.     This Complaint is filed prior to the expiration of the statutory time period and within six (6) months of the date of first written notice of a possible claim.

15.     Northstar does not presently know the total amount of the claims that have been or may be made for the losses and damages sustained, however, certain claims have been filed in the related action. *Hydro Marine Construction Company, Inc. filed a Complaint for Exoneration from or Limitation of Liability* in accordance with 46 U.S.C.

30505 and 30511, *Civil Action 13-3671.*

16.    On or about June 12, 2013, as a result of the aforesaid accident, Hydro filed a Complaint for Exoneration from or Limitation of Liability in accordance with 46 U.S.C. 30505 and 30511, Civil Action 13-3671. Within that action, Hydro filed an Affidavit of Value in the amount of $120,000 for the Northstar 92.  Hydro also filed its Bond for Limitation Fund in the amount of $362,000; $120,000 of which was allotted for the NORTHSTAR 92. A copy of that Bond is attached as **Exhibit 2** hereto.

17.    Northstar herein claims Exoneration from Liability for any and all losses, damages, and injuries occasioned by the incident described herein, as provided in 46 U.S.C. §§ 30501 *et seq.*

18.    If, however, Northstar is judged liable as titled owner of the Northstar 92 , Northstar alternatively claims the benefit of Limitation of Liability, as provided in 46 U.S.C. §§ 30501 *et seq.*, and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

WHEREFORE, Plaintiff Northstar makes Application for and Prays that:

A.    This Honorable Court issue an Order accepting Northstar's Ad Interim Stipulation  as sufficient security since proper security for the Northstar 92 has been posted for this incident in the related action: *In The Matter of The Complaint of Hydro Marine Construction Company Inc. for Exoneration from or Limitation of Liability,  Civil Action 13-3671*;

B.    This Honorable Court issue an Order enjoining all pending freight and future claims against the NORTHSTAR 92 and Northstar for any and all claims arising out of the accident which occurred on or about February 17, 2013, or arising out

of the voyage of February 17, 2013 or otherwise asserting any claim with respect to the

NORTHSTAR 92  for which Northstar seeks exoneration from or limitation of liability

herein, and further issue a Monition admonishing them to appear and file their respective

claims with the Clerk of this Court, to serve on or mail copies thereof to the attorneys for

Northstar herein and named on or before the date to be specified in the Order, and to

make due proof of their respective claims and further to file their respective answers, if

any, to the allegations of this Complaint on or before the date specified in the Monition,

all as provided by law and by the Federal Rules of Civil Procedure;

        C.      That notice of the Order, in the form and manner prescribed by

Supplemental Rule F(4), be published in such newspaper as the Court may direct or as

specified by local rules once a week for at least four (4) successive weeks before the

dates specified in the Monition for filing claims herein;

        D.      That this Court issue an injunction restraining the further

prosecution of any and all suits, actions and proceedings which may have been

commenced in any court whatsoever to recover damages for any and all losses or

damages occasioned or incurred by or in any way resulting from the incident involving

the voyage of the NORTHSTAR 92 on or about February 17, 2013, and restraining the

commencement or prosecution thereafter of any suit, action or legal proceeding of any

nature or description, except this action against Northstar, its agents, servants, or

employees, or the said vessel, in respect of any such claims;

        E.      That in this proceeding the Court find that Northstar is not liable to

any extent upon any of the claims made or that may be made as described above, or if

Northstar is found liable, then that any such liability be limited to the value of its interests

in the NORTHSTAR 92 immediately after the accident on February 17, 2013, and that a

decree be entered discharging Northstar and the vessel of and from any and all further

liability; and

        F.      That this Court grant Northstar such other and further relief as it

may deem just and proper in the circumstances.

        **HOLLSTEIN KEATING CATTELL**
        **JOHNSON & GOLDSTEIN, P.C.**

        By:     s/ James W. Johnson (JJ4811)
        James W. Johnson (JJ4811)
        Hollstein Keating Cattell
        Johnson & Goldstein P.C.
        Willow Ridge Executive Office Park
        750 Route 73 South - Suite 202B
        Marlton, NJ 08053
        (856) 810-8860
        FAX: (856) 810-9316
        jjohnson@hollsteinkeating.com

        Attorneys for Plaintiff Northstar Marine,
        Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on or about August ___, 2013, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.

**HOLLSTEIN KEATING CATTELL
JOHNSON & GOLDSTEIN, P.C.**

By: ___s/ James W. Johnson (JJ4811)___
James W. Johnson (JJ4811)
Hollstein Keating Cattell
  Johnson & Goldstein P.C.
Willow Ridge Executive Office Park
750 Route 73 South - Suite 301
Marlton, NJ  08053
(856) 810-8860
FAX: (856) 810-9316
jjohnson@hollsteinkeating.com

Attorneys for Plaintiff Northstar Marine Inc.

# EXHIBIT 1

## MASTER BAREBOAT CHARTER AGREEMENT

THIS MASTER BAREBOAT CHARTER AGREEMENT (the "Agreement"), made by and between  Hyrdro Marine Construction  , hereinafter referred to as "CHARTERER", and Northstar Marine, Inc., its affiliated, subsidiary, or interrelated companies, hereinafter collectively referred to as "OWNER":

### W I T N E S S E T H

WHEREAS, OWNER and certain of its subsidiaries and affiliated companies offer to charter, bareboat and unmanned, both owned and non-owned marine vessels of different sizes, type and horsepower, (hereinafter referred to as "vessel"); and

WHEREAS, from time to time, CHARTERER may require to charter, bareboat and unmanned, certain of OWNER'S  vessel(s), whether one or more;

THEREFORE the Parties hereby agree that all charter hire, will be performed under the following terms and conditions;

1)      VESSEL SELECTION

CHARTERER shall designate the vessel or vessels it desires from time to time to bareboat charter by notifying OWNER of a particular vessel or particular size or horsepower vessel desired, specifying the date that CHARTERER desires the vessel to be available, and the intended term of its use.  OWNER shall indicate its willingness to furnish a particular vessel or particular size and horsepower vessel by furnishing the vessel for CHARTERER's operations.

2)      NO OBLIGATION

This agreement does not obligate CHARTERER to order or charter any vessel from OWNER nor does it obligate OWNER to accept such orders or to furnish any vessel to CHARTERER, but it, together with all applicable Charter Orders shall govern all work accepted by OWNER and shall define and govern all rights and obligations of the parties hereto for the duration of this Agreement.  The Agreement is deemed to be in effect between CHARTERER and OWNER for any Charter Order regardless of the initiating agency of said work and /or service payment agency of work performed under that work order.  At such time as CHARTERER desires to charter a vessel from OWNER, CHARTERER shall issue a Charter Order in the form annexed as Exhibit "A" hereto.  Regardless of whether such Charter Order is issued, the terms and conditions of this Agreement shall control any charter of vessels by OWNER to CHARTERER.

3)      ENTIRE AGREEMENT

This Master Bareboat Charter, together with the conditions of any Charter Order issued in connection herewith, shall constitute the entire agreement of the parties.  This Agreement supersedes all prior agreements and understandings between the parties, whether oral or written.

1

All towing, stevedoring, wharfage, pilotage, harbor fees or dues, municipal, state or federal sales or use taxes, city, state or town property taxes and other similar charges accruing during the charter period shall be for the account of CHARTERER.

15)   VESSEL MODIFICATION

CHARTERER may not make any additions and changes in Vessel without the written consent of the OWNER.  All equipment installed by CHARTERER shall remain its property and will be removed at termination of charter, thereby returning Vessel to its pre-charter condition unless otherwise agreed to in writing by OWNER.

16)   CHARGES AND EXPENSES

CHARTERER shall bear and pay during the term of this Agreement all wharfage, loading and unloading charges, and all expenses of any kind whatsoever in connection with the maintenance (clean up) handling, navigation, towage, use and operation of the Vessel(s). at CHARTERER's sole expense, and shall pay any and all fines or penalties levied against the Vessel(s) by any governmental authority as the result of CHARTERER's actions, other than those resulting from acts or omissions of OWNER in any capacity, it being understood that during the term of this Agreement, OWNER retains no control, possession or command of the Vessel(s).

17)   MAINTENANCE AND REPAIR

CHARTERER shall, without expense to OWNER, be fully responsible for maintenance and repair of the Vessel and shall at all times use due diligence to maintain and preserve the Vessel in the same good order and condition as when delivered to CHARTERER, ordinary wear and tear excepted, so that the Vessel shall be tight, staunch, strong, equipped and in every respect seaworthy.  The Vessel shall remain on charter until all maintenance and repairs have been performed.

18)   INVENTORY

A complete inventory of the Vessels' entire equipment, outfit, appliances and all consumable stores on board the Vessel shall be made at the time of delivery and again on re-delivery of the Vessels.  Differences in the on and off inventories shall be paid for by CHARTERER at the then current market prices.

19)   TAXES

CHARTERER shall pay all taxes applicable to CHARTERER's control, use and operation of the Vessel(s), including but not limited to, any transportation, use, sales, or other taxes arising out of the control, use and operation of the Vessel during the term of this Agreement (excluding taxes on OWNER's income).  CHARTERER agrees to indemnify and hold OWNER harmless from all claims, seizures, charges, encumbrances, suits or penalties which may be imposed upon the Vessel(s) or OWNER by reason for CHARTERER's failure to pay said taxes accruing during the term of this Agreement.

4

20) <u>INSURANCE</u>

A. CHARTERER shall procure and maintain, at CHARTERER's cost and expense, during the term of this Agreement:

i) Commercial General Liability (CGL) insurance in the amount of $1,000,000, including contractual obligations, with any "WATERCRAFT EXCLUSION" deleted.

ii) Statutory Workers Compensation insurance for all of CHARTERER's personnel.

iii) Hull and P&I insurance with an A&M Best or equivalent "A" rated company with a P&I limit of $1,000,000.00 and hull coverage with a limit equal to Owner's policy for vessel[s] chartered.

(1) OWNER shall have the right to obtain Hull and P&I insurance on behalf of the CHARTERER should CHARTERER not obtain same before delivery. Additionally, OWNER has the right to pay the premiums for such insurance and to add the premiums to the account of CHARTERER.

iv) CHARTERER hereinafter called Named Insured, shall cause OWNER to be included as an Additional Insured and covered by the insurance policies described above, and the Named Insured shall ensure that the respective insurers waive all rights of recovery against OWNER.

v) The naming of OWNER as Additional Insured is not intended and shall not derogate from the division of risk and Indemnity Agreements set out under this Agreement.

B. CHARTERER shall furnish OWNER with evidence of insurance naming OWNER prior to commencement of the Charter. All policies of insurance shall provide that they may not be canceled or materially altered for any reason without thirty (30) days prior written notice to OWNER. All policies of insurance, whether procured by CHARTERER or OWNER must contain an endorsement waiving the underwriters' right of subrogation against the other party. Should CHARTERER fail to obtain the aforementioned insurance or the OWNER not obtain the aforementioned insurance on behalf of CHATERER, CHARTERER shall be considered self-insured up to the amount and for the type of insurance required under this Agreement.

C. The insurance policies required above shall each constitute primary insurance coverage to any insurances already in place on the Vessel(s) by OWNER. CHARTERER shall be responsible for payment of all deductibles, and OWNER assumes no responsibility hereunder for the payment of any deductible and/or retention.

21) <u>INDEMNITY</u>

5

CHARTERER releases OWNER from any liability to CHARTERER for, and CHARTERER will defend, indemnify and hold OWNER harmless from and against, all suits, actions, claims and demands, by whomever brought, based on property damage, environmental damage, personal injury or death, whenever occurring, suffered or incurred by CHARTERER, its contractors and subcontractors and the officers, employees, agents and representatives of any of them, or third parties, arising from or related in any way to performance of the work hereunder and use of the Vessel(s) regardless of how such personal injury or death is caused and even if caused by the negligence, whether sole or concurrent or active or passive, or other legal fault, including strict liability of OWNER.

22)   CONSEQUENTIAL DAMAGES

Notwithstanding any other provision of this Agreement, in no event shall either party be liable to the other, whether based on contract, tort (including negligence), strict liability or otherwise, for loss or anticipated profits, cost of money, loss of use or capital or revenue, or for any special, incidental or consequential damages arising at any time or from any cause whatsoever.

23)   LIENS

i)      Neither CHARTERER nor any of its officers, employees or agents, nor the Master or any other officer or member of the crew of the Vessel(s) shall have any rights, power or authority to create, incur, suffer or permit to be placed or imposed upon the Vessel(s) any maritime or other lien, encumbrance or charge whatsoever (other than towage liens, crew's wages and salvage) or to incur debt, obligation or charge upon the credit of the Vessel(s).

ii)     In the event, notwithstanding the foregoing, a maritime or other lien, encumbrance or charge (other than towage, crew's wages and salvage), shall be placed upon the Vessel(s), or in the event the Vessel(s) shall be levied against or taken into custody by virtue of any legal proceedings in any court, based upon claim or cause of action, valid or invalid, founded or unfounded, alleged to have arisen during the term of this Agreement, CHARTERER shall within ten (10) days, caused the Vessel(s) to be released and/or the asserted libel, maritime or other lien, encumbrance or charge to be discharged.

iii)    In the event a maritime or other lien, encumbrance or other charge shall be placed upon the Vessel(s), or in the event the Vessel(s) shall be levied against or taken into custody by virtue of any legal proceedings in any court, based upon a claim or cause of action, valid or invalid, founded or unfounded, alleged to have arisen, prior to this Agreement, OWNER shall within ten (10) days cause the Vessel(s) to be released and/or the asserted libel, maritime or other lien, encumbrance or charge to be discharged. During any period in which the Vessel(s) is unavailable for use by CHARTERER as a result of any claim having arisen prior to this Agreement the charter hire due shall be terminated until such time as the Vessel(s) becomes available or a substitute Vessel(s) is furnished.

6

24)   <u>NOTICE</u>

The address of OWNER for sending of notices hereunder shall be Northstar Marine, Inc., 36 Clermont Drive, Clermont, New Jersey 08210, Attention: Mr. Phil Risko.

The address of CHARTERER for the sending of notices hereunder shall be _____, Attention:_____.

Any notice under this Agreement shall be deemed to have been given if sent by registered mail, telex, or facsimile addressed to the recipient at the address hereinabove set forth and deemed to have been received as of date of receipt of registered mail or if by telex or facsimile when receipt is acknowledged by answer back.

25)   <u>TERMINATION</u>

Either party may cancel this Agreement upon the giving of thirty (30) days prior written notice to the other, in accordance with Paragraph 24; provided, however, that any unexpired Charter Order shall continue in effect subject to the terms and conditions thereof until expiration of the term specified in such Charter Order or until termination pursuant to this Master Agreement.

Should CHARTERER default, as defined in Paragraph 27, then OWNER shall have the right to terminate that Charter Order, and all provisions contained in this Master Agreement or that particular Charter Order. Additionally, OWNER shall have the right to terminate this Master Agreement and/or any Charter Order if there is a voluntary or involuntary making of an assignment of a substantial portion of CHARTERER's assets for the benefit of its creditors, the appointment of a receiver or trustee for CHARTERER or for any of CHARTERER's assets, or of any formal or informal proceeding for dissolution, liquidation, settlement of claims against or the winding up of the affairs of CHARTERER, or the making by CHARTERER of a transfer of all or a material portion of CHARTERER's assets or investments.

Termination of this Master Agreement or any Charter Order shall not extinguish the rights, benefits, and obligations of CHARTERER and OWNER that have accrued up to the date of termination.

26)   <u>APPLICABLE LAW</u>

This Agreement shall be governed and construed in accordance with the General Maritime Laws of the United States, provided, however, to the extent that such laws are not applicable for any portion of the work, the laws of the State of New Jersey shall apply. The parties agree that jurisdiction and venue shall exclusively be the United States District Court for the District of New Jersey.

27)   <u>DEFAULT</u>

7

The following shall, without limitation, constitute events of default under this charter:

i)   Failure of the CHARTERER to pay charter hire on and when the same shall be due, time being the essence in this respect;

ii)   Failure of the CHARTERER to perform each and every covenant contained herein to be done and performed by it;

iii)   The occurrence of any event causing the CHARTERER to be prohibited by governmental or other action from Chartering the Vessel(s);

iv)   The filing of a petition in bankruptcy by or against the CHARTERER; the entry of any order adjudicating the CHARTERER bankrupt;

v)   the making by CHARTERER of a general assignment for the benefit of creditors; the appointment of a receiver of any kind, whether in admiralty, bankruptcy, common law or equity proceedings;

vi)   the filing by CHARTERER of a petition for reorganization under the Bankruptcy Act.

vii)   and/or failure of the CHARTERER to comply with any applicable provisions of State, Federal and/or territorial laws;

1.      Upon the happening of an event of default as hereinabove specified, then and in every such case, OWNER may:

a)   Withdraw Vessel(s) from CHARTERER's service.  Upon such withdrawal CHARTERER shall forthwith be deemed divested or all right, title, interest, claim and/or demand whatsoever, in and to the Vessel(s) and this Charter, and such withdrawal shall be a perpetual bar against the CHARTERER and against all persons who may claim any right under this Charter or against the Vessel(s).  Such Withdrawal does not relieve the CHARTERER of the obligation to pay, including but not limited to, charter hire, damages, repairs, towing, all expenditures necessary to retake or regain possession of the Vessel(s), and for any and all damages sustained by OWNER from or by reason of any default or defaults of the CHARTERER.

28)   ARREST

In the event that the Vessel(s) shall be arrested or detained and shall not be released within ten (10) days, CHARTERER does hereby empower and authorize OWNER, in the name of the CHARTERER, to apply for and receive possession thereof, or to take possession thereof, and this power of attorney shall be irrevocable and may be exercised not only by OWNER, but also by any appointee or appointees of OWNER with full power of substitution for the same extent and effect as if such appointee had been named as one of the attorneys above named by express designation.

29)   DIVING

Should any diving operations be contemplated by the work to be performed, CHARTERER shall notify OWNER prior to commencement of the work.  OWNER must

8

4)    <u>DELIVERY</u>

The Vessel(s) are being delivered to CHARTERER in an "as is" condition and OWNER makes no representation, or warranty, express or implied, as to the condition or seaworthiness of the Vessels at the time of delivery.  CHARTERER shall not be entitled to make or assert any claim, directly or indirectly, against OWNER in respect to the Vessel(s)' condition or seaworthiness.  Acceptance of the Vessel(s) by CHARTERER shall constitute conclusive proof of the fitness of the Vessel(s) for CHARTERER's intended use and CHARTERER's continued use shall be conclusive proof of its continued seaworthiness.  Delivery to and use by CHARTERER of the Vessel(s), which may include any actions taken by CHARTERER under any provision of this charter, establishes conclusively that all of the terms and conditions of this Bareboat Charter Agreement are in effect.

5)    <u>SUBSTITUTION</u>

Permission is granted to OWNER, in fulfilling any Charter Order under this agreement, to procure a substitute vessel owned or operated by some other party.  The substitute vessel will be of a type and specifications comparable to the vessel being substituted and will be subject to acceptance by CHARTERER.

6)    <u>PAYMENT</u>

In consideration of OWNER's Agreement to charter the Vessel(s), CHARTERER agrees to pay charter hire the rate specified in Exhibit "A" to OWNER for each day, or part thereof pro-rata on a daily basis during which the Vessel(s) remains under charter beginning on the day the Vessel(s) is delivered to CHARTERER.  Charter hire shall be payable within 30 days following receipt of invoices.  Invoices not paid when due are subject to interest at 1.5% per month.  Payment of this interest shall not waive the OWNER's right to terminate this Bareboat Charter Agreement as provided in Paragraph 25.

7)    <u>RESPONSIBILITY</u>

CHARTERER assumes full responsibility for the Vessel(s), its use and operation during the charter period and shall have full and exclusive use, possession and control of the Vessel(s) and shall pay all costs, charges and expenses of whatsoever nature, incident to the use, operation and maintenance of the Vessel(s) during the charter period.  OWNER assumes no liability for loss of time or damage or expense on account of accidents, strikes, delays, Vessel(s)' damages or breakdowns, etc., or consequential damages and will make no allowance for loss of time due to weather or surface conditions, suspension of work or any other reason.  CHARTERER shall provide a safe berth, including protection from mischief or vandalism for the Vessel(s).  In the event of a casualty, the OWNER shall be notified of said casualty in writing within 24 hours.  The Vessel(s) shall be operated so that it shall not be overloaded or operated in any manner inconsistent with prudent maritime practices.

2

8)   USE

It is understood and agreed that CHARTERER intends to use the Vessel(s) for the purposes specified in Exhibit "A" and no other use is permitted without the express written consent of OWNER.  It is expressly understood and agreed that all loading, handling, launching and removal/discharge of cargo/equipment and any ancillary/auxiliary materials is the sole responsibility of CHARTERER.  CHARTERER is responsible for obtaining all necessary permits or licenses from any federal, state or local authority for the carriage or handling of any equipment or cargo.

9)   AREA OF OPERATIONS

As specified in Exhibit "A" or such other areas as subsequently designated by CHARTERER and agreed to in writing by OWNER.

10)   SUBCHARTER

CHARTERER shall not have the right to subcharter or otherwise assign this Master Bareboat Charter without the express written consent of OWNER.

11)   TERM

The Charter term will begin upon delivery of the Vessel(s) at the location specified in Exhibit "A" and continue until all of the CHARTERER's cargo and equipment is removed from the Vessel(s) and unless the Vessel(s) shall be lost or destroyed, shall remain under charter until CHARTERER returns the Vessel(s) to the OWNER in the same good order and condition as when received, ordinary wear and tear excepted.

12)   LOSS OF VESSEL

In the event of total loss, actual or constructive, as constructive total loss is defined in the applicable policy of marine hull insurance, payment shall be made up to and including the date and hour of the accident or occurrence giving rise to the loss.  If the date and hour of the loss be uncertain, then payment shall be made up to and including date and hour she is last heard from.

13)   LIMITATIONS OF LIABILITY

Notwithstanding all other provisions hereof, OWNER and CHARTERER shall have the benefit of all exemptions from any limitations of liability to which an OWNER of a Vessel(s) is entitled under the laws of the United States, including but not limited to 46 U.S.C.A. § 183, *et seq.*

14)   TOWING/TAXES

3

be completely defended and indemnified against personal injury and death claims by divers or related to diving operations prior to commencement of the work.

30) SEVERABILITY

If any one provision or group of provision in this Agreement shall be held to be invalid, void or of no affect for any reason whatsoever, such holding shall not be deemed to affect the validity of the remaining provisions in this Agreement, which shall subsist in full force and effect.

31) SURVIVAL

It is agreed and understood by the parties that Paragraph 21 and Paragraph 26 shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties hereunder have executed this Agreement on the day and year first hereinabove written.

WITNESSES:                                    NORTHSTAR MARINE, INC.

_____           BY: _____
(SIGNATURE OF WITNESS)                    (SIGNATURE)

Alice Filloon                                 Ann Marie Tirri
(PRINTED NAME)                            (PRINTED NAME)


                                              CHARTERER

_____           BY: _____
(SIGNATURE OF WITNESS)                    (SIGNATURE)

Suzanne Cutts                             Janet L. Castle
(PRINTED NAME)                            (PRINTED NAME)

9

EXHIBIT "A"

VESSEL CHARTER ORDER

<u>January 22</u>         , 201<u>3</u>

To:    Owner

Re:  Bareboat Charter of <u>NS 92</u>

Attention:_____

        Pursuant to the terms of the Master Bareboat Charter Agreement existing between us, this Order sets forth certain conditions regarding the bareboat charter of

<u>90' x 30' x 9' Barge w/Hydraulic Spud & Hydraulic Crane</u>

| 1. | Date of Delivery: | January 23, 2013 |
|----|-------------------|------------------|
| 2. | Place of Delivery: | Jersey City, NJ |
| 3. | Date of Redelivery: | Approximately March 23, 2013 |
| 4. | Place of Redelivery: | Jersey City, NJ |
| 5. | Term of Charter: | 30 to 60 Days |
| 6. | Rate of Hire: | $12,000.00 per month |
| 7. | Demurrage Rate: | |
| 8. | Meals and Lodging: | |
| 9. | Use | |

| 10. | Area of Operations: | Route 35 Bridge, Lawrence Harbor, NJ |
|----|-------------------|------------------|

11.   Special Conditions:   _____
_____
_____

      Please date and sign the duplicate copy of this Charter Order acknowledging the above terms.

            Sincerely,

            *Janexnlastle*

            Charterer

*AGREED TO AND ACCEPTED THIS* 25ᵗʰ *DAY OF*

January_____ , 20 13 .

_____

Owner

11

# EXHIBIT 2

100-13/JFK/EJC
FREEHILL, HOGAN & MAHAR, LLP
549 Summit Avenue
Jersey City, New Jersey 07306-2701
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------------x

IN THE MATTER OF THE COMPLAINT OF:

HYDRO-MARINE CONSTRUCTION
COMPANY, INC.,

AS OWNER AND OPERATOR OF THE TUG
DEVIL'S BRIDGE, AND OWNER
*PRO HAC VICE* AND OPERATOR OF
BARGE NORTHSTAR 92 AND
BARGE FLEXI-FLOAT

-----------------------------------------------------

Trenton Vicinage

Civ. _____

**UNSWORN DECLARATION OF
JANET L. CASTLE
PURSUANT TO 28 USC 1746
REGARDING THE VALUE OF
THE VESSELS AND PENDING
FREIGHT**

I, Janet L. Castle, depose and say:

1.      I am the President and Owner of Hydro-Marine Construction Company, Inc. ("Hydro-Marine"), which company is engaged in marine construction.

2.      In accordance with instructions I received from attorneys representing Hydro-Marine, the Tug Devil's Bridge, and the barges Northstar 92 and Flexi-Float (collectively "Plaintiff"), I conducted an evaluation of what the value of the said vessels was on February 17, 2013, the date of the incident set forth in the Complaint for Exoneration from or Limitation of Liability filed in this matter.

3.      My evaluation is based on my knowledge of the fair market value of similar vessels at the time of the incident.

401494.1

4.      I estimate the fair market value of the Tug Devil's Bridge on February 17, 2013 to have been maximum $80,000.

5.      I estimate the fair market value of the Barge Northstar 92 on February 17, 2013 to have been maximum $120,000.

6.      I estimate the fair market value of the Barge Flexi-Float on February 17, 2013 to have been maximum $162,000.

7.      At the time of the incident, there was no pending freight due and/or owing to Plaintiff.

I declare, pursuant to 28 U.S.C. 1746(2), under penalty of perjury that the foregoing is true and correct.

Executed on May   16 , 2013

Janet L. Castle

401494.1                                        2

Case 3:13-cv-03671-FLW-TJB   Document 1-2   Filed 06/13/13   Page 4 of 8 PageID: 13

Case 3:13-cv-03671-FLW-TJB   Document 1-2   Filed 06/13/13   Page 5 of 8 PageID: 14

| | |
|---|---|
| 1 | FREEHILL, HOGAN & MAHAR, LLP |
| | 549 Summit Avenue |
| 2 | Jersey City, New Jersey 07306-2701 |
| | *Attorneys for Plaintiff* |
| 3 | John F. Karpousis |
| | Edward J. Carlson |
| 4 | |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In the Matter of the Complaint of: | ) | Trenton Vicinage |
| | ) | |
| | ) | Case No.: |
| | ) | |
| HYDRO-MARINE CONSTRUCTION | ) | **PLAINTIFF'S BOND FOR** |
| COMPANY, INC., | ) | **LIMITATION FUND** |
| | ) | **[Admiralty Rule F(1); LAMR (f)]** |
| AS OWNER AND OPERATOR OF THE | ) | |
| TUG DEVIL'S BRIDGE, AND OWNER | ) | |
| *PRO HAC VICE* AND OPERATOR OF | ) | BOND NO.: **105943799** |
| BARGE NORTHSTAR 92 AND | ) | |
| BARGE FLEXI-FLOAT | ) | PREMIUM:          $ 905.00 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| For Exoneration from or | ) | |
| Limitation of Liability | ) | |
| | ) | |

KNOW ALL BY THESE PRESENTS, that HYDRO-MARINE

CONSTRUCTION COMPANY, INC., Owner of the Tug Devil's Bridge, and Owner

*Pro Hac Vice* of Barge Northstar 92 and Barge Flexi-Float, as Principal; and

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, as Surety,

are held and firmly bound unto the Clerk of the United States District Court for the

District of New Jersey, Trenton Vicinage, as Obligee, in the sum of three-hundred and

sixty-two thousand two-hundred and fifty and 00/100 dollars ($362,250.00) plus

interest at the rate of 6% per annum, to the use of the Obligee in the within proceeding

for the benefit of all claimants herein pursuant to Rule F(1) of the Supplemental Rules

for Certain Admiralty and Maritime Claims.  This bond includes security costs in the

amount of $250.00 as required by LAMR (f).

-1-

402613.1

1         The condition of the obligation is such that if a judgment shall be entered

2  against the Principal in this action, then the Principal shall satisfy the judgment with

3  interest and costs, if any, and if the Principal fails to do so, the within named Surety

4  shall do so for said Principal up to the penal sum of the bond. HYDRO-MARINE

5  CONSTRUCTION COMPANY, INC., Owner of the Tug Devil's Bridge, and Owner

6  *Pro Hac Vice* of Barge Northstar 92 and Barge Flexi-Float, as Principal, hereby

7  guarantees to Surety that they shall fully indemnify Surety for any sum Surety may

8  become liable to pay as a result of this obligation.  Upon payment of the judgment by

9  Principal or by the within named Surety, then this obligation shall be void; otherwise it

10  shall remain in full force and effect.

11

12  Dated: *June 10, 2013*         HYDRO-MARINE CONSTRUCTION

13                     COMPANY, INC.

14

15                     By:

16                           PRINCIPAL

17

18  Dated:   May 31, 2013        TRAVELERS CASUALTY AND

                           SURETY COMPANY OF AMERICA

19

20                     By:

21                       MAYRA MERCADO,

22                       ATTORNEY-IN-FACT

23'

24

25

26

27

28

402056.1

Case 3:13-cv-0367~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~Page 7 of 8 PageID: 16

**TRAVELERS**

# POWER OF ATTORNEY

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No.   225884

Certificate No. **005290038**

**KNOW ALL MEN BY THESE PRESENTS:** That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Joyce Burks, Mayra Mercado, Anzalena Talip, Margaux S. Murray, Aaron D. Moskovitz, and Marximiliano Pozo

of the City of ____New York_____, State of _____New York_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

IN WITNESS WHEREOF, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____4th_____
day of ____December____, ____2012____.

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the ___4th___ day of ____December____, ____2012____, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

In Witness Whereof, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2016.



_____
Marie C. Tetreault, Notary Public

58440-8-12 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

Case 3:13-cv-0367~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~Page 8 of 8 PageID: 17

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this     31     day of     May     , 20 13 .

Kevin E. Hughes, Assistant Secretary

       

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER